PATRICIA JORDAN, Plaintiff v. DENNIS C. JORDAN, Defendant

No. COA02-1754

(Filed 6 January 2004)

**1. Appeal and Error— assignments of error—arguments deemed abandoned**

Violations of the assignment of error requirements of the Rules of Appellate Procedure resulted in arguments being dismissed or deemed abandoned.

JORDAN v. JORDAN

[162 N.C. App. 112 (2004)]

**2. Child Support, Custody, and Visitation— custody—change—interference with visitation and non-custodial relationship**

The decision to change child custody from plaintiff to defendant was supported by findings of fact, which were supported by the evidence, that plaintiff had interfered with defendant's visitation and with the child's relationship with defendant and his new wife. Interference with visitation which has a negative impact on the welfare of the child can constitute a substantial change of circumstances.

**3. Child Support, Custody, and Visitation— custody—best interest of child—contempt finding**

A finding of contempt was sufficient to support the conclusion that a change of custody would be in the best interest of the child where plaintiff provided the basic physical needs of the child but exposed the child to emotional harm and caused the deterioration of the child's relationship with his father.

Appeal by plaintiff from order entered 8 March 2002, *nunc pro tunc* for 28 January 2002, by Judge Sarah C. Seaton in Onslow County District Court. Heard in the Court of Appeals 1 December 2003.

*Janet Pittman Reed for plaintiff-appellant.*

*No brief filed for defendant-appellee.*

EAGLES, Chief Judge.

Plaintiff Patricia Jordan appeals from an order modifying a previous custody order regarding her son Patrick. Plaintiff argues that the trial court erred in finding a substantial change in circumstances justifying its custody modification; that insufficient evidence supported the trial court's ruling that a change of custody would serve the best interest of the child; and that insufficient evidence supported the trial court's conclusion that plaintiff was in contempt for violating the previous custody order. After careful consideration, we affirm in part and dismiss plaintiff's appeal in part.

The evidence tended to show the following. Defendant is Patrick's biological father, Dennis C. Jordan. When plaintiff and defendant divorced in 1995, plaintiff was awarded primary physical custody of Patrick. An order entered on 17 February 1998 awarded

defendant significant periods of visitation with his son at defendant's home in Oklahoma. By another order on 16 May 2000, the trial court found plaintiff in contempt for violating the provisions of the 1998 custody order. The 16 May 2000 order also modified the visitation allowed by the 1998 custody order.

Patrick traveled to Oklahoma to spend his 2001 summer vacation with defendant as scheduled under the court orders. After Patrick went to Oklahoma for the summer, plaintiff enrolled him in a private school that had an earlier starting date for classes than the public school he had previously attended. Plaintiff testified that defendant's wife Rhonda called plaintiff on 16 or 19 July 2001 to determine when Patrick should return to North Carolina to start school. Plaintiff notified defendant and Rhonda that Patrick should return to North Carolina earlier than had been originally planned. Defendant and Rhonda exchanged Patrick's airplane ticket so that he could fly back on 3 August instead of 6 August. Plaintiff testified that Patrick called her from Oklahoma and said that he was scared to fly alone to North Carolina. Defendant and Rhonda testified that plaintiff would not finalize her plans regarding who was going to meet Patrick at the airport. Patrick was not able to fly from Oklahoma unaccompanied because of his youth and the fact that the airline was unable to confirm who would meet him at the Raleigh-Durham airport. Plaintiff's sister Dorothy Zimmer testified that she went to the Raleigh-Durham airport on 3 August to meet Patrick for plaintiff, but Patrick did not arrive on the anticipated flight.

Patrick returned from Oklahoma when he was accompanied on the flight by Rhonda Jordan on 7 August 2001. Patrick was sent home from school on 8 August with a note from the school nurse, stating that Patrick was suffering from a severe case of poison ivy. Defendant testified that he bought Patrick a "four-wheeler" immediately before Patrick returned to North Carolina. Defendant was not aware that Patrick had a poison ivy rash before he left, but stated that Patrick probably was exposed to poison ivy in the woods while riding the "four-wheeler."

The Thanksgiving 2001 visitation also caused a dispute. Plaintiff and defendant communicated through their attorneys in order to make the flight arrangements for Patrick to go to Oklahoma. Plaintiff stated that she did not receive airline tickets from defendant for the planned flight to Oklahoma on 21 November 2001 until 28 November 2001. Defendant stated that plaintiff would not cooperate with his

attempts to make travel plans for Patrick and refused to accept delivery of the plane tickets.

The parties agreed that Patrick could fly to Oklahoma during his Christmas vacation since Patrick did not visit defendant at Thanksgiving. Patrick told defendant over the telephone that he hated defendant and did not want to visit him. Plaintiff and defendant again experienced difficulty agreeing upon Patrick's travel arrangements. Defendant flew to Wilmington, North Carolina, in order to accompany Patrick back to Oklahoma. Plaintiff and Patrick arrived over an hour late to meet defendant at the airport. Plaintiff accompanied Patrick into the airport, but did not bring any luggage into the airport terminal. Plaintiff said that Patrick was so upset that she left his luggage in the car. Plaintiff had a video camera with her inside the airport terminal, but defendant testified that plaintiff never turned it on. Patrick had a temper tantrum at the airport and refused to fly to Oklahoma with his father. Patrick did not board the plane and did not have visitation with defendant over the Christmas vacation period.

After the Christmas vacation incident, defendant filed a motion for contempt and requested modification of the custody order. Plaintiff had filed a motion for contempt against defendant in August 2001. All motions were heard on 28 January 2002. Defendant testified that he had not been able to communicate with his son by telephone on Wednesday and Sunday nights as directed in the 2000 custody order. According to defendant's telephone records, he succeeded in contacting Patrick on only forty-five percent of the scheduled nights from March to December 2000, despite his repeated attempts. In 2001, defendant was able to contact Patrick only thirty-six percent of the time scheduled, with the majority of calls being unanswered and no phone calls returned.

The trial court entered an order modifying the custody arrangement on 8 March 2002. Plaintiff was required to pay $1250, which represented the expenses defendant incurred while trying to arrange the failed visitation attempt in December 2001. Plaintiff was also ordered not to communicate with the child until Patrick had been evaluated by a psychiatrist. In addition, plaintiff was ordered to seek anger management counseling. The trial court found that plaintiff had willfully interfered with defendant's telephone visitation with Patrick and that plaintiff tried to alienate Patrick from defendant and his wife Rhonda. The trial court found that plaintiff's actions and feelings of malice toward defendant had emotionally harmed Patrick. The trial court

awarded primary custody of the child to defendant. The trial court held that the issue of plaintiff's visitation rights would be determined at a later hearing. Plaintiff appeals.

**[1]** As a preliminary matter, we note that plaintiff has violated Rules 9(b)(4), 26(g), 28(b)(4), 28(b)(6) and 28(j) of the North Carolina Rules of Appellate Procedure in preparing the record on appeal and her brief. *See* N.C. R. App. P. 9(b)(4), N.C. R. App. P. 26(g), N.C. R. App. P. 28(b)(4), N.C. R. App. P. 28(b)(6) and N.C. R. App. P. 28(j). Plaintiff failed to comply with our Court's rules regarding the font size and spacing of her brief and the preparation and arrangement of the record on appeal. In her brief, plaintiff fails to cite an assignment of error to support her third argument. As a sanction, we dismiss plaintiff's third argument in its totality.

Plaintiff's remaining arguments on appeal do not correspond to the assignment of error cited in her brief. Six of plaintiff's assignments of error are not argued in her brief and are therefore deemed abandoned. Plaintiff cites her fourth assignment of error as the basis for her first and second arguments, which states: "The Plaintiff contends that the finding of Contempt was insufficient to base the change of custody to the Defendant without an inquiry into the best interests of the minor child." The North Carolina Rules of Appellate Procedure clearly state that "the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal in accordance with this Rule 10." N.C. R. App. P. 10(a). Therefore, all arguments presented in plaintiff's brief that are inconsistent with her fourth assignment of error are deemed abandoned on appeal.

**[2]** Plaintiff argues that the trial court's findings of fact which supported its decision to hold plaintiff in contempt of court were insufficient to support its conclusion that a substantial change in circumstances had occurred. We disagree.

An interested party must file a motion in the cause and show a change in circumstances before a child custody order may be modified. *See* G.S. § 50-13.7(a) (2001). Whether a change of circumstances affecting the welfare of the child has or has not occurred is a conclusion of law. *See Benedict v. Coe*, 117 N.C. App. 369, 377, 451 S.E.2d 320, 325 (1994). "The decision of the trial judge regarding custody will not be upset on appeal absent a clear showing of abuse of discretion, provided that the decision is based on proper findings of fact sup-

ported by competent evidence." *Woncik v. Woncik*, 82 N.C. App. 244, 247, 346 S.E.2d 277, 279 (1986) (citing *Comer v. Comer*, 61 N.C. App. 324, 300 S.E.2d 457 (1983)).

Here, the trial court found, in pertinent part:

b. The testimony from Defendant and Rhonda Jordan is that their relationship with the minor child has deteriorated since March 13, 2000. The Court finds that this deterioration in their relationship with the minor child has been a result of the Plaintiff's willful failure and refusal to comply with the terms of the previous orders of this Court, and as a result of Plaintiff discouraging the child from continuing a relationship with the Defendant and Rhonda Jordan, and as a result of Plaintiff discouraging the child from visiting Defendant and Rhonda Jordan.

c. The Court finds that the Plaintiff's words and actions, as hereinbefore set forth, have emotionally harmed the minor child and have damaged the child's relationship with Defendant and Rhonda Jordan.

d. That the Plaintiff has properly provided for the child's education, his nurturing and his physical health; however, her continued disruption and hampering of Defendant's visitation of his son and her continuing denigrating attitude and actions towards Defendant since March 2000 have adversely affected the child's relationship with his father and step-mother. The Plaintiff has failed to isolate the child from the problems between the parties, and the child's relationship with Defendant and Rhonda Jordan has deteriorated.

This Court has held that "[b]ecause the welfare of the child is the paramount concern in custody cases, interference with visitation of the noncustodial parent which has a negative impact on the welfare of the child can constitute a substantial change of circumstances sufficient to warrant a change of custody." *Woncik v. Woncik*, 82 N.C. App. 244, 249, 346 S.E.2d 277, 280 (1986) (internal citation omitted). Here, the trial court's findings were adequately supported by the evidence. Both parties testified that plaintiff allowed Patrick to view electronic mail messages that were sent by defendant to plaintiff. Defendant also presented evidence that he had not been able to place telephone calls to Patrick as part of his visitation schedule. Accordingly, we overrule this assignment of error.

**[3]** Plaintiff also argues that the finding of contempt was not sufficient to support the trial court's conclusion that a change of custody would serve the best interest of the child. We disagree.

"In making the best interest decision, the trial court is vested with broad discretion and can be reversed only upon a showing of abuse of discretion." *Ramirez-Barker v. Barker*, 107 N.C. App. 71, 79, 418 S.E.2d 675, 680 (1992) (citing *In re Peal*, 305 N.C. 640, 290 S.E.2d 664 (1982)), *overruled on other grounds, Pulliam v. Smith*, 348 N.C. 616, 501 S.E.2d 898 (1998). "A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). Here, the trial court concluded that a change of custody was in the child's best interest after it found that plaintiff, although able to provide basic physical needs for the child, had exposed the child to emotional harm and caused the deterioration of the child's relationship with his father. It cannot be said that the trial court's decision to award primary custody of Patrick to defendant was "manifestly unsupported by reason." This assignment of error is overruled.

For the reasons stated, we affirm the trial court's order modifying custody and dismiss plaintiff's appeal in part.

Affirmed in part; dismissed in part.

Judges MARTIN and LEVINSON concur.